**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------X

JEAN PAUL ALLARDET SERVENT,
Individually and on Behalf of All Others
Similarly Situated,

                    Plaintiff,

     vs.

ACTIVIDENTITY CORPORATION,
GRANT EVANS, BRAD BOSTON,
ROBERT BRANDEWIE, JAMES
FRANKOLA, STEVEN HUMPHREYS,
JAMES E. OUSLEY, DAVID B. WRIGHT,
ASSA ABLOY INC., and
FITACQUISITION, INC.,

               Defendants.

-------------------------------------------------------X

Case Number _____

**CLASS ACTION COMPLAINT FOR
BREACH OF FIDUCIARY DUTY AND
INDIVIDUAL CLAIMS FOR VIOLATION
OF SECTIONS 14(a) and (e) AND 20(a) OF
THE SECURITIES EXCHANGE ACT OF
1934**

**JURY TRIAL DEMANDED**

Plaintiff Jean Paul Allardet Servent ("Plaintiff"), by and through his attorneys, alleges the following as to himself and on information and belief (including the investigation of counsel and review of publicly available information) as to all other matters stated herein:

## INTRODUCTION

1.      This is both an individual action and a shareholder class action brought by Plaintiff on behalf of the public holders of ActivIdentity Corporation ("ActivIdentity" or the "Company"), seeking to enjoin certain actions of the defendants in connection with the proposed acquisition of ActivIdentity by ASSA ABLOY Inc. and its wholly owned subsidiary FitAcquisition, Inc., (collectively "ASSA").

2.      On October 11, 2010, ActivIdentity announced that the ActivIdentity and ASSA had entered into a definitive Agreement and Plan of Merger ("Merger Agreement"), pursuant to which ASSA would acquire all of the outstanding shares of ActivIdentity common stock of $3.25 per share in cash in a transaction valued at approximately $162 million ("Proposed Transaction").

3.      Over the past two years, the temporary downturn in the economy has caused many of ActivIdentity's customers to delay capital expenditures.  To counteract the effects of this declining economy, the Company implemented extensive cost cutting measures, streamlined operations, improved efficiency, reduced costs and realigned its business around areas of strategic focus.  These cost reductions and changes in strategic focus were so successful, that earlier this year, in public filings with the U.S. Securities and Exchange Commission ("SEC"), defendant Grant Evans ("Evans"), the Company's Chairman and CEO, proclaimed "*[b]ased on the current market prices, we believe that our stock is undervalued*. . . ."

4.      Evans reiterated this message with the release of each quarter's financial results, with statements such as: "*[w]e believe that the security and compliance market will outpace the total I.T. market growth rate over time.  Our focus has been on improving our operations and sales execution and we are confident that we will see gradual improvement.*"

5.      Instead of allowing ActivIdentity's shareholders to benefit from the Company's improving growth potential, the Proposed Transaction will provide ASSA – while the Company's stock remains undervalued – with the ability to recognize the remarkable potential ActivIdentity has as a company in the rapidly growing security and compliance market, and to allow ASSA to capitalize on ActivIdentity's cost cutting and strategic focus efforts over the past year.   In addition to the benefits conferred on ASSA as a result of the Proposed Transaction to the detriment of the Company's shareholders, the Proposed Transaction will also provide ActivIdentity insiders with a windfall in the form of lucrative severance and change-of-control benefits.

6.      Moreover, the proposed acquisition is a coercive transaction designed to divest ActivIdentity's shareholders of their interest in the Company without material information necessary to cast an informed vote in favor of the Proposed Transaction.

7.      As such, the Proposed Transaction, if consummated, will unlawfully divest ActivIdentity's public stockholders of their holdings in the Company.

8.      In pursuing the unlawful plan to facilitate the Proposed Transaction, each of the defendants violated applicable law by directly breaching and/or aiding the other defendants' breaches of their fiduciary duties of loyalty, due care, independence, good faith and fair dealing.

2

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over all claims asserted herein pursuant to 28 U.S.C §1331 in that plaintiff's claims arise in part under the Constitution and laws of the United States, including the Exchange Act [15 U.S.C. §78aa] and 28 U.S.C. §1331.  This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

10.      This Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a), (c), and (d) as Plaintiff and the defendants are citizens of and domiciled in different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.  Given that the Proposed Transaction is valued at $1.25 billion, the injunctive relief sought herein will exceed a sum or value of $75,000.  This action is not a collusive one to confer jurisdiction on this Court.

11.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 because ActivIdentity is incorporated in Delaware and is therefore a resident of this District.

## PARTIES

12.      Plaintiff is and at all material times hereto has been a holder of ActivIdentity common stock.  Plaintiff is a citizen of France.

13.      Defendant ActivIdentity is a Delaware corporation with its headquarters located at 6623 Dumbarton Circle, Fremont, CA 94555.   The Company is a global leader in strong authentication and credential management, which provides solutions to establish a person's identity when interacting digitally.   The Company's customers include security-minded organizations in banking and finance, government and enterprises of all sizes which have issued more than 100 million credentials, securing the holder's digital identity.  ActivIdentity's common stock is traded on the NASDAQ stock exchange under the ticker symbol "ACTI."

3

14.     Defendant Grant Evans ("Evans") has served as the Company's Chairman of the Board since his election to the Board in March 2008 and as Chief Executive Officer since April 2008.  Evans is a citizen of California.

15.     Defendant Brad Boston ("Boston") has served as a director of the Company since January 19, 2010.  Boston is a citizen of California.

16.     Defendant Robert Brandewie ("Brandewie") has served as a director of the Company since March 2008.  Since November 2007, Brandewie has served as the Senior Vice President, Identity and Security Solutions of Telos Corporation, an information technology solutions and services company addressing the needs of U.S. Government and commercial customers.   Previously, Brandewie served as ActivIdentity's Senior Vice President, Public Sector Solutions, from July 2006 to October 2007.  In this capacity, Brandewie was responsible for driving and extending the Company's comprehensive set of identity security solutions for the global government market.   Brandewie is a citizen of California.

17.     Defendant James W. Frankola ("Frankola") has served as a director of the Company since February 2006.  Frankola is Chairman of the Board's Audit Committee and a member of the Compensation Committee.  Frankola is a citizen of California.

18.     Defendant Steven Humphreys ("Humphreys") has served as a director of the Company since March 2008.  Humphreys is a citizen of California.

19.     Defendant James E. Ousley ("Ousley") has served as a director of the Company since September 1996.   Ousley is Chairman of the Board's Nominating and Corporate Governance Committee and is a member of both the Compensation and Audit Committees. Ousley is a citizen of Arizona.

20.     Defendant David B. Wright ("Wright") has served as a director of the Company since March 2008.  Wright is Chairman of the Compensation Committee and a member of the Board's Nominating and Corporate Governance Committee.  Wright is a citizen of California.

21.     Defendant ASSA ABLOY Inc. ("ASSA"), is an Oregon corporation with its headquarters located at 15370 Barranca Parkway, Irvine CA 92618.  ASSA in turn is a wholly owned subsidiary of ASSA ABLOY AB, which is a Swedish corporation.

22.     Defendant FitAcquisition, Inc., is a Delaware corporation and a wholly owned subsidiary ASSA.  FitAcquisition, Inc.'s headquarters located are at 15370 Barranca Parkway, Irvine CA 92618.   Defendants ASSA and FitAcquisition, Inc., are collectively referred to herein as "ASSA."

23.     The Defendants named in ¶¶13-19 are sometimes collectively referred to herein as the "Individual Defendants" or the "Board."

## THE INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES UNDER STATE LAW

24.     By reason of the above Individual Defendants' positions with the Company as directors and/or officers, said individuals are in a fiduciary relationship with Plaintiff and the other public stockholders of ActivIdentity who are being and will be harmed by the defendants' actions described herein and owe Plaintiff and the other members of the Class a duty of highest good faith, fair dealing, loyalty and full and adequate disclosure.

25.     Each of the Individual Defendants is required to act in good faith, in the best interests of the Company's shareholders and with such care, including reasonable inquiry, as would be expected of an ordinarily prudent person.  In a situation where the directors of a publicly traded company undertake a transaction that may result in a change in corporate control, the applicable state law requires the directors to take all steps reasonably required to

5

maximize the value shareholders will receive rather than use a change of control to benefit themselves.  To diligently comply with this duty, the directors of a corporation may not take any action that:

A.  adversely affects the value provided to the corporation's shareholders;

B.  contractually prohibits them from complying with or carrying out their fiduciary duties;

C.  discourages or inhibits alternative offers to purchase control of the corporation or its assets; or

D.  will otherwise adversely affect their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders.

26.     In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of ActivIdentity, are obligated under applicable law to refrain from:

A.  participating in any transaction where the directors' or officers' loyalties are divided;

B.  participating in any transaction where the directors or officers receive, or are entitled to receive, a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

C.  unjustly enriching themselves at the expense or to the detriment of the public shareholders.

27.     The Individual Defendants are also obliged to honor their duty of candor to ActivIdentity's shareholders by, *inter alia*, providing all material information to the

shareholders regarding a situation in which they are asked to vote or tender their shares in favor of a proposed merger. This' duty of candor ensures that the Company's shareholders have all information that will enable them to make informed, rational and intelligent decisions as to whether to relinquish their ownership in ActivIdentity for the consideration offered.

28.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, are knowingly or recklessly violating their fiduciary duties, including their duties of loyalty, good faith, and independence owed to Plaintiff and other public shareholders of ActivIdentity. The Individual Defendants stand on both sides of the transaction, are engaging in self dealing, are obtaining for themselves personal benefits, including personal financial benefits not shared equally by Plaintiff or the Company's other stockholders. As a result of the Individual Defendants' self dealing and divided loyalties, neither Plaintiff nor the Class (as defined herein) will receive adequate or fair value for their ActivIdentity common stock in the Proposed Transaction.

## CLASS ACTION ALLEGATIONS

29.     Plaintiff brings this action individually and as a class action pursuant to Rule 23 on behalf of all holders of ActivIdentity stock who are being and will be harmed by Defendants' actions described below (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendants.

30.     This action is properly maintainable as a class action. The Class is so numerous that joinder of all members is impracticable. As of July 30, 2010 there were over 47 million of ActivIdentity common stock outstanding. These shares are held by hundreds, if not thousands, of beneficial holders.

31.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, *inter alia*, the following:

A.      whether the Individual Defendants have breached their fiduciary duties of good faith, loyalty, independence or due care with respect to Plaintiff and the other members of the Class in connection with the Proposed Transaction;

B.      whether the Individual Defendants have breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of Plaintiff and the other members of the Class in connection with the Proposed Transaction;

C.      whether the Individual Defendants have breached their fiduciary duty of candor to Plaintiff and the other members of the Class in connection with the Proposed Transaction by failing to disclose to shareholders all material information necessary to cast an informed vote;

D.      whether the Individual Defendants, in bad faith and for improper motives, have impeded or erected barriers to discourage other strategic alternatives including offers from interested parties for the Company or its assets;

E.      whether Plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated; and

F.      whether ActivIdentity and ASSA are aiding and abetting the wrongful acts of the Individual Defendants.

32.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

33.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class.

34.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

35.     Plaintiff anticipates that there will be no difficulty in the management of this litigation.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

36.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

**Background**

37.     ActivIdentity was founded in 1987 and is a global leader in strong authentication and credential management, providing solutions to confidently establish a person's identity when interacting digitally.   The Company's products and services have been leveraged by security-minded organizations in large-scale deployments such as the U.S. Department of Defense, Nissan, and Saudi Aramco.   The Company's customers have issued more than 100 million credentials, securing the holder's digital identity.

38.     ActivIdentity provides key building blocks for securing information technology ("IT") infrastructures and digital transactions to defend against security threats and identity fraud and at the same time increase an organization's resource utilization, improve

9

productivity, and maximize return on investment.  The Company delivers these products and services through four primary product segments: Strong Authentication; Credential Management; Security Clients; and Authentication Devices.

39.    The Company markets and sells its products, technologies and services through a worldwide direct sales force and through a network of partners, including system integrators, original equipment manufacturers, value added distributors, and value added resellers.  The Company delivers security solutions in three primary markets: Employer-to-Employee, Business-to-Customer, and Government-to-Citizen.

40.    Historically, ActivIdentity's common stock traded well above the $3.25 consideration offered in the Proposed Transaction.  Beginning in 2008, however, and like many other companies during that time, ActivIdentity's business and the trading price of its common stock began suffering the effects of a lingering economic recession.

41.    To counteract the effects of the declining economy, the Company implemented extensive cost cutting measures, streamlined operations, improved efficiency, and reduced costs. These steps were taken to realign the Company's business around areas of strategic focus and reduce costs.

42.    These costs cutting measures provided strong positive results in 2009 and poised the Company for growth and improved financial results in 2010 and beyond. As explained by defendant Evans when the Company announced its 2009 year-end financial results on November 19, 2009:

> We are pleased with our financial results for fiscal 2009.  ***We were able to increase our top line by six percent year over year and generate positive Adjusted EBITDA in this challenging economic environment.  We've improved our execution and maintained fiscal discipline over the last several quarters and we will maintain this posture going forward.***

43.    The Company continued to improve its operations and reduce costs throughout 2010.  For example, in announcing ActivIdentity's financial results for the second quarter of 2010 on May 6, 2010, defendant Evans stated:

> The economic climate remains challenging and our financial results for the first two fiscal quarters reflect the softer demand that we experienced in certain markets for some of our products.   We have mana*ged our expenses exceptionally well and we believe that our fiscal 2010 will show an increase in profitability and modest growth in revenue compared to fiscal 2009.   We believe that the security and compliance market will outpace the total I.T. market growth rate over time.   Our focus has been on improving our operations and sales execution and we are confident that we will see gradual improvement.*

44.    Again, when the Company announced its financial results for the third quarter of 2010 on August 5, 2010, defendant Evans again proclaimed:

> Our quarterly revenues have been impacted by the economic climate and continued delays in the IT procurement cycle.  *Our cost structure reflects our lower level of activity and should position us for further financial leverage when the general economic climate becomes more accommodating.*

45.    Indeed, the Company's improved execution and financial discipline led the Board to approve a stock repurchase program in February 2010.  Under the stock repurchase plan, ActivIdentity was authorized to repurchase up to $10 million or approximately 8% of the Company's outstanding shares of common stock in the open market from time to time between February 2010 and February 2011.  Notably, in discussing the repurchase plan, defendant Evans stated, "[b]ased on the current market prices, *we believe that our stock is undervalued and that the repurchase program is a good investment of available funds.*  Our strong balance sheet enables us to actively invest cash in areas that we believe will drive future value…"  In fact, according to the Company's August 6, 2010 Form 10-Q, "During the three and nine months ended June 30, 2010, the Company repurchased 744,100 of shares through open

market repurchases at an average cost of $2.31 per share for a total of approximately $1.7 million."

46.     Further, the Company continues to be a global leader in the field of strong authentication and credential management.   Only days after announcing the Proposed Transaction, ActivIdentity cemented its status as an industry innovator with the announcement of the new 4TRESS Authentication Server. With respect to this new product, defendant Evans stated:

> We've broadened ActivIdentity's existing platform to create the industry's most convenient and consistent customer experience with flexible pricing and simple implementations.

47.     Tom Wills, senior analyst, Risk, Fraud and Security at Javelin Strategy & Research reacted positively to the release and had this to say about the Company's future prospects in light of its new 4TRESS Authentication Server:

> Fraud attacks are rapidly evolving and the banks are understandably reluctant to implement inflexible solutions that may cease to be effective in the near future. The vendors that recognize these trends and offer flexible, extensible products will be the ones that succeed in this market.

48.     Furthermore, on October 21, 2010 the Company announced that the National Policing Improving Agency ("NPIA") in the United Kingdom had procured 250,000 licenses of its ActivIdentity ActivID Card Management System and ActivIdentity ActivClient security software to issue digital credentials to members of the country's police forces. The ActivIdentity solution was selected as a key component of the NPIA Identity and Access Management framework, which Siemens Enterprise Communications owns and operates. Craig Pollard, head of the criminal justice sector at Siemens Enterprise Communications, said:

> Together with ActivIdentity we are continuing to extend our market share in the UK law enforcement sector by delivering innovative solutions that offer value for money.

49.     Defendants recognized that ActivIdentity common stock was "undervalued," and the company was optimally poised for future growth and strong financial performance. Rather than permitting the Company's shares to continue trade freely and allowing its public shareholders to reap the benefits of the Company's extensive cost cutting measures, streamlined operations, improved efficiency, reduced costs, strategic focus, and consequently the Company's increasingly positive prospects and future financial success, the Individual Defendants acted for their own benefit and the benefit of ASSA, and to the detriment of the Company's public shareholders, by entering into the Proposed Transaction.  The Individual defendants' effectively capped ActivIdentity's price at a time when the Company's stock was suffering the effects of a lingering economic recession and when it was poised to capitalize on its positive and encouraging financial outlook.

**The Proposed Transaction**

50.     On October 10, 2010 ActivIdentity issued a press release announcing the Proposed Transaction, which stated:

> ActivIdentity Corporation, (NASDAQ: ACTI), a global leader in intelligent identity assurance, today announced that the company has entered into a definitive agreement to be acquired by ASSA ABLOY AB, the parent company of HID Global, in a cash transaction at a price of $3.25 per share, or approximately $162 million. This per share price represents a premium of approximately 43% over the closing price of ActivIdentity shares on Friday, October 8, 2010 and a premium of 48% over the 20-day average of closing prices. ActivIdentity will become part of ASSA ABLOY's HID Global business and ActivIdentity products will provide the foundation for HID Global's logical access offering.
>
> The acquisition, which is subject to ActivIdentity shareholder approval, applicable regulatory clearances and other customary closing conditions, is expected to close in December 2010.

13

Commercial and government organizations are faced with ever-changing threats to their information and physical assets and, at the same time, they must deal with a broad range of compliance requirements. Optimizing security while simplifying the user experience and minimizing costs is an enormous challenge that can best be solved by joining logical and physical access capabilities into a single, integrated solution. The combination of ActivIdentity's suite of identity assurance solutions with HID's physical and logical access solutions, provides a powerful offering to the market.

"Organizations and their users are burdened with the expense and complexity of redundant identity assurance technologies," said Grant Evans, chairman and CEO of ActivIdentity. "Now for the first time, customers will be able to benefit from the convergence of physical and logical access control solutions."

"Through the combined power of HID Global and ActivIdentity, we have a compelling opportunity to finally address the use of a single credential for access to physical and logical domains," said Denis Hebert, president and CEO of HID Global. "ActivIdentity is a strong complement to our identity and access management solutions, enabling us to add a new dimension in our ability to deliver value to our customers."

Foros Securities LLC acted as exclusive financial adviser to ActivIdentity.  Wilson Sonsini Goodrich & Rosati, P.C. acted as counsel to ActivIdentity.

51.     The consideration offered to ActivIdentity's public stockholders in the Proposed Transaction is unfair and grossly inadequate because, among other things, the intrinsic value of ActivIdentity's common stock is materially in excess of the amount offered for those securities in the Proposed Transaction given the fact that the Company is poised to achieve significant growth in the near future.

52.     The Proposed Transaction comes at a time when the Company's stock price is undervalued but its prospects for growth and increased revenue are substantially increasing as the economic recession is ending and as ActivIdentity continues to successfully implement its cost containment and operations improvement measures.  ActivIdentity insiders are well aware

14

of the Company's intrinsic value and that ActivIdentity shares are significantly undervalued. Indeed, in the midst of negotiating the Proposed Transaction, defendant Evans publicly stated that the Company's stock was "undervalued."  Likewise, ASSA recognized ActivIdentity's solid performance and potential for growth and determined to capitalize on the recent downturn in the Company's stock price at the expense of ActivIdentity's public shareholders.  ASSA is seeking to engage in a transaction that secures an opportunity to benefit from the Company's recent cost reduction efforts and prospects for future growth, while the Company's shareholders are provided inadequate consideration without the benefit of a full and fair sales process.

53.     In contrast, the Individual Defendant fare far better under the terms of the Proposed Transaction.  For example, Defendant Evans stands to receive financial benefits as a result of the Proposed Transaction.  Specifically, on August 25, 2010, while defendants were negotiating the Proposed Transaction, the Company approved changes to defendant Evans' contract which increases the amount of his severance payments, extends his post termination time period for health coverage, accelerates the vesting schedule of all equity incentive awards then held by him, and extends his post termination exercise period for equity incentive awards in the event Evans is terminated within one year of a Change of Control.  Under these changes, Evans is entitled to receive severance payments of $ 1,082,000, and is entitled accelerated vesting and exercise of options to purchase 1,579,173 shares of Company stock, from which he will receive an additional financial benefit of over $ 1,650,000.00.  Further, the remaining Individual Defendants hold over 130,000 unvested restricted stock units which will likewise be entitled to accelerated vesting, producing an immediate financial benefit of over $485,000.00.

54.     Under the circumstances, the Individual Defendants are obligated to explore all alternatives to maximize shareholder value.

**The Preclusive Deal Protection Devices**

55.     The entire process deployed by ActivIdentity's Board and ASSA is also unfair and inadequate.  As part of the Merger Agreement, the Individual Defendants agreed to certain onerous and preclusive deal protection devices on behalf of ActivIdentity that operate conjunctively to make the Proposed Transaction a *fait d'accompli,* which effectively preclude any other offer to be made to the Company and prevent a competing offer or bidder to surface to the detriment of ActivIdentity shareholders.  The effect of these deal preclusion provisions are especially onerous in light of the fact that at the time the Merger Agreement was executed, there were at least three other parties, identified in the Proxy as Party C, Party F and Party G who had indicated that they remained interested in acquiring ActivIdentity.  Thus, the effect of the deal protection provisions was to effectively preclude an auction of the Company whereby ActivIdentity's public shareholders could have received fair value for their shares.

56.     First, §5.3 of the Merger Agreement contains a strict "no shop" provision prohibiting the members of the Board from taking any affirmative action to comply with their fiduciary duties to maximize shareholder value, including soliciting proposals relating to alternative tender offer or business combinations.  The Merger Agreement also includes a strict "standstill" provision which prohibits, except under extremely limited circumstances, the Individual Defendants from even engaging in discussions or negotiations relating to proposals regarding alternative business combinations.

57.     Section 5.3(b) of the Merger Agreement provides a limited situation under which the ActivIdentity Board may enter into discussions and negotiations for a competing

unsolicited bid, only after the Board determines that the alternative acquisition proposal "either constitutes a Superior Proposal or is reasonably likely to lead to a Superior Proposal" and "the Company Board shall have determined in good faith (after reasonable consultation with its outside legal counsel) that the failure to take such action would reasonably be expected to be a breach of its fiduciary duties under applicable Law." Even then, however, under §5.3(c) of the Merger Agreement, the ActivIdentity Board is required to provide ASSA with written notice of such an acquisition proposal, the identity of the offering party and all materials terms of the proposal immediately "upon receipt."

58.     Thus, even if the ActivIdentity Board receives an intervening bid that appeared to be "superior" to ActivIdentity's offer, they are precluded from even entering into discussions and negotiations unless they first reasonably determine in good faith that the alternative proposal is, in fact, "superior."  Consequently, this provision prevents the ActivIdentity Board from exercising their fiduciary duties and precludes an investigation into competing proposals unless, as a prerequisite, the majority of the ActivIdentity Board first determines that the proposal is "superior."

59.     Further, the Merger Agreement includes a $5 million termination fee to be paid to ASSA if ActivIdentity terminates the Proposed Transaction.  Together with the aforementioned onerous terms, the termination fee ensures no competing bid will surface to the detriment of ActivIdentity shareholders.

**The Materially Misleading And/or Incomplete Disclosure Documents**

60.     On November 12, 2010, ActivIdentity filed its Proxy Statement Pursuant to Section 14(a) of the Securities Exchange Act of 1934 on Schedule 14A ("Proxy") with the SEC.

61.     The Proxy fails to provide the Company's shareholders with material information and/or provides them with materially misleading information thereby rendering the shareholders unable to make an informed decision on whether to vote their shares in support of the Proposed Transaction.

62.     First, as disclosed in the Proxy, during the early stages of the negotiations, America's Growth Capital ("AGC") served as the Company's financial advisor. Several months into the negotiations to sell the Company, however, the Company learned that AGC was a shareholder in one of the principal parties seeking to acquire the Company. Upon this discovery, rather than reevaluating the sale of the Company – particularly in light of the fact that the Company was "undervalued" at the time – the Board merely retained Foros Securities LLC ("Foros") to serve as its financial advisor and continued negotiations. The Proxy fails to disclose what criteria the Board considered to select either advisors and what procedures (if any) were put in place to avoid further potential conflicts. Moreover, the Proxy should disclose additional information regarding the remuneration agreed to be paid to AGC and Foros, or the portion of fees that are contingent upon consummation of the Proposed Transaction.

63.     In addition, the Proxy fails to disclose all of the underlying methodologies, projections, key inputs and multiples relied upon and observed by Foros in connection with the Proposed Transaction, which are necessary for shareholders to evaluate and properly assess the credibility of the various analyses performed by Foros and relied upon by the Board in recommending the Proposed Transaction. In particular, the Proxy is deficient and should provide, inter alia, the following:

    A.      A description of the criteria used by Foros to select each company in the *Comparable Company Analysis* and the reasons to limit the analysis to

only 2 companies. Further, the numerical results in dollars observed in the analysis;

B.    A description of the criteria and multiples observed by Foros for each company in its *Selected Precedent Transaction Analysis* for ActivIdentity. Further, the numerical results in dollars observed in the analysis;

C.    A description of the companies and premiums observed by Foros for each company in the *Premia Paid Analysis*;

D.    A description of whether the *Discounted Cash Flow Analysis* for ActivIdentity included consideration of stock-based compensation and whether the analysis takes into consideration NOLs, if any. Further, a description of the criteria used to select a discount rate of 10.4% and perpetuity growth rates of 1% to 3% in the analysis.

64.    The complete set of projections for ActivIdentity relied upon by the Board and Foros in rendering its fairness opinion, which must include ActivIdentiy's free cash flows used in the Discounted Cash flow Analysis.

65.    Accordingly, because the foregoing material misstatements and omissions represent a violation of federal and state law, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company shareholders will continue to suffer absent judicial intervention.

### FIRST CAUSE OF ACTION

**On Behalf of Plaintiff for Violations of Sections**
**14(a) and 14(e) of the Exchange Act**
**(Against ActivIdentity and the Individual Defendants)**

66.    Plaintiff brings this Exchange Act claim on behalf of himself as an individual.

67.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

68.    ActivIdentity and the Individual Defendants have caused the Proxy to be issued with the intention of soliciting shareholder support of the Proposed Transaction.

19

69.     Sections 14(a) and (e) of the Exchange Act require full and complete disclosure in connection with proxy solicitations.  Specifically, Section 14(e) provides that:

> It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation.

70.     The Proxy violates Sections 14(a) and 14(e) because it omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, ActivIdentity and the Individual Defendants should have known that the Proxy is materially misleading and omits material facts that are necessary to render them non-misleading.

71.     The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the date of the shareholder vote on the Proposed Transaction.

## SECOND CAUSE OF ACTION

### On Behalf of Plaintiff for Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

72.     Plaintiff brings this Exchange Act claim on behalf of himself as an individual.

73.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

74.     The Individual Defendants acted as controlling persons of ActivIdentity within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of ActivIdentity, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the

Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

75.     Each of the Individual Defendants were provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

76.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

77.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

78.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

79.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling

persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct

and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

### THIRD CAUSE OF ACTION

**On Behalf of Plaintiff and the Class for Breach of Fiduciary Duties
Against the Individual Defendants**

80.     Plaintiff incorporates each and every allegation set forth above as if fully set

forth herein.

81.     The Individual Defendants have violated fiduciary duties of care, loyalty,

candor and good faith owed to public shareholders of ActivIdentity.

82.     By the acts, transactions and courses of conduct alleged herein, defendants,

individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff

and other members of the Class of the true value of their investment in ActivIdentity.

83.     As demonstrated by the allegations above, the Individual Defendants failed to

exercise the care required, and breached their duties of loyalty, good faith, candor and

independence owed to the shareholders of ActivIdentity because, among other reasons, they

failed to take steps to maximize the value of ActivIdentity to its public shareholders, by, among

other things, failing to adequately consider potential acquirers, instead favoring their own, or

their fellow directors or executive officers' interests to secure all possible benefits with a

friendly suitor, rather than protect the best interests of ActivIdentity's shareholders.

84.     The Individual Defendants dominate and control the business and corporate

affairs of ActivIdentity, and are in possession of private corporate information concerning

ActivIdentity's assets, business and future prospects. Thus, there exists an imbalance and

disparity of knowledge and economic power between them and the public shareholders of

ActivIdentity which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing shareholder value.

85.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

86.     As a result of the actions of defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of ActivIdentity's assets and businesses and have been and will be prevented from obtaining a fair price for their common stock.

87.     Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the members of the Class.

88.     Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which defendants' actions threaten to inflict.

## FOURTH CAUSE OF ACTION

### On Behalf of Plaintiff and the Class
### Against ActivIdentity and ASSA for Aiding and Abetting the
### Individual Defendants' Breach of Fiduciary Duty

89.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

90.     ActivIdentity and ASSA have acted and are acting with knowledge of, or with reckless disregard for, the fact that the Individual Defendants are in breach of their fiduciary

duties to ActivIdentity's public shareholders, and has participated in such breaches of fiduciary duties.

91.     ActivIdentity and ASSA knowingly aided and abetted the Individual Defendants' wrongdoing alleged herein.   In so doing, ActivIdentity and ASSA rendered substantial assistance in order to effectuate the Individual Defendants' plan to consummate the Proposed Transaction in breach of their fiduciary duties.

92.     Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands injunctive relief in its favor and in favor of the Class and against Defendants as follows:

A.      Declaring that this action is properly maintainable as a Class action with regards to the claims arising under state law and certifying Plaintiff as Class representative;

B.      Enjoining defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Transaction, unless and until the Company makes full and complete disclosure of all materials facts necessary to enable shareholders to cast an informed vote on the Proposed Transaction;

C.      Enjoining defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Transaction, unless and until the Company adopts and implements a procedure or process to obtain a merger agreement providing the best possible terms for shareholders;

D.      Rescinding, to the extent already implemented, the Proposed Transaction or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

E.      Directing the Individual Defendants to account to Plaintiff  and the Class for all damages suffered as a result of the Individual Defendants wrongdoing;

F.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

G.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

93.     Plaintiff hereby demands a trial by jury for all issues so triable.

Dated: November 30, 2010

**COOCH AND TAYLOR, P.A.**

*/s/ Blake A. Bennett*
Blake A. Bennett (#5133)
The Brandywine Building
1000 West Street, 10th Floor
Wilmington, DE 19801
(302) 984-3800
*Attorneys for Plaintiff*

**OF COUNSEL:**

**FARUQI & FARUQI, LLP**
Nadeem Faruqi, Esquire
Juan E. Monteverde, Esquire
369 Lexington Avenue, 10th Floor
New York, NY 10017
Tel.: (212) 983-9330
Fax: (212) 983-9331